UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   *Plaintiff*,<br><br>v.<br><br>$144,800 IN UNITED STATES<br>CURRENCY,<br>   *Defendant*.<br><br>[CLAIMANT:  RINA JOHANNES] | Civil No.<br><br><br><br><br><br><br><br><br>September 11, 2020 |

## VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, John H. Durham, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This is a civil *in rem* action brought to enforce the provisions of 21 U.S.C. § 881(a)(6), which provides for the forfeiture of proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 & 1355. Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendant is $144,800 in United States Currency ("Defendant Currency").

4. The Defendant Currency is located within the jurisdiction of this Court.

5. On June 18, 2020, Rina Johannes submitted an administrative claim of ownership to Defendant Currency.

### Background of Investigation

6. In December of 2019, law enforcement received information about a drug trafficking organization ("DTO") working in and around Hartford, Connecticut.  As part of this

information, law enforcement learned that Rina Johannes (also known as "Soshonna Carter," also known as "Sasha") was transporting money for the DTO via domestic airline flights between the east and west coasts of the United States.

7. On April 7, 2020, law enforcement learned that Johannes had booked a flight for April 11, 2020, at 6:00am, traveling from Bradley Airport to Washington, Dulles, to Denver, to Ontario, California.

8. On April 10, 2020, law enforcement conducted surveillance on various locations associated with Johannes.

9. As part of the surveillance, law enforcement observed and followed an associate of Johannes while he was leaving his house and driving in his car.

10. Law enforcement believed the associate to be part of the DTO. Further, law enforcement had previously observed an individual matching the associate's description involved in the transportation of money between Bradley International Airport and Las Vegas, NV.

11. While law enforcement was following the associate's car, the associate made aggressive counter-surveillance moves, such as conducting a series of unexplained/unusual turns down residential streets and/or looping back on his previously travelled route. Because of this behavior, law enforcement ceased actively following the associate's car so as not to alert him to the fact that he was under surveillance.

12. Law enforcement located the associate's car at the departure terminal at 4:50am on April 11, 2020, where the associate dropped off Johannes.

13. Johannes entered the terminal, checked in, and dropped off a large piece of luggage. Law enforcement noted that the associate in the car, based on his position, was able to look through the windows of the terminal to watch Johannes' checking in to her flight.

14. Law enforcement located Johannes' luggage, which had a checked bag label on the top handle with the name "JOHANNES/RIN."

15. Law enforcement removed the luggage from the check in area.

16. Law enforcement then conducted a bag/luggage line-up with a law enforcement canine trained in drug detection. The canine alerted to the odor of drugs on Johannes' luggage. The bags were rearranged and shuffled and the canine again alerted to the odor of drugs on Johannes' luggage.

17. Following the canine's multiple alerts, law enforcement located Johannes. Law enforcement confirmed her identity and confirmed that the luggage in question was Johannes' luggage.

18. Johannes explained that: the luggage was her luggage, but that she had borrowed it from her landlord; she packed the luggage the prior evening; everything in the luggage belonged to her; her associate dropped her off at the airport (although Johannes' gave law enforcement an incorrect name for the associate); no one put anything in her luggage; and she did not know why a law enforcement canine would alert to her luggage.

19. Johannes further told law enforcement that she had booked her flight on either Tuesday or Wednesday of the same week (April 11, 2020, was a Saturday) and that she was going to see friends.

20. Johannes' gave law enforcement consent to search her luggage. Johannes observed law enforcement search the luggage.

21. Notably, law enforcement discovered that Johannes' items were thrown in the luggage, unfolded and not separated or arranged in any manner.

22. Inside of the luggage, law enforcement found a thin liner made up of grey lightweight material with a Velcro-type seam on the bottom. When the seam was separated, it exposed a hard plastic bottom covering the area where the handle of the luggage would retract. Black duct tape was covering the outer portion of the plastic.

23. Law enforcement removed the black duct tape and discovered two long cuts, from top to bottom, in the hard plastic.

24. Law enforcement then looked inside the cut area and found three vacuum sealed bags that contained black carbon paper over what law enforcement believed to be bulk currency.

25. The carbon paper obscured the currency from the X-ray machine; i.e., the carbon paper covered tell-tale gaps in the currency and disguised the shape of the stacks of currency.

26. Law enforcement asked Johannes if she knew anything about the three vacuum sealed bags of currency. Johannes denied knowing what it was and denied knowing that it was there. Johannes stated that the bag belonged to her ex-boyfriend and that whatever law enforcement found in the bag belonged to him.

27. Law enforcement asked Johannes if the currency belonged to her but she denied ownership. Johannes willingly signed an abandonment of rights form, abandoning any interest in the currency. *See* exhibit 1.

28. The currency located by law enforcement is the Defendant Currency.

29. Law enforcement asked Johannes if they could examine her mobile phone. Johannes consented and provided the passcode.

30. Law enforcement later located and interviewed Johannes' associate who had dropped her off at the airport. The associate stated that he had just dropped off his girlfriend "Sasha"

at the airport. Law enforcement knew that Johannes also uses the nickname Sasha based on the email address she used to book the flight.

## **CONCLUSION**

31. Based on the above information, it is believed that the $144,800 in United States Currency constitutes proceeds from the illegal sale and distribution of narcotics and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

32. The Defendant Currency represents proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

Wherefore, the United States of America prays that a Warrant of Arrest In Rem be issued for $144,800 in United States Currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

JOHN H. DURHAM,
UNITED STATES ATTORNEY

By:   /S/ David C. Nelson
      David C. Nelson (ct25640)
      Assistant U.S. Attorney
      157 Church Street, 24th Floor
      New Haven, Connecticut 06510
      Tel:   (203) 821-3700
      Fax:   (203) 773-5373
      David.C.Nelson@usdoj.gov

## **DECLARATION**

I am a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice, and the individual assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of September, 2020.


/s/ Steven M. Koss
STEVEN M. KOSS
TASK FORCE OFFICER, DEA

## **Exhibit 1**

DEPARTMENT OF HOMELAND SECURITY

NOTICE OF ABANDONMENT AND ASSENT TO FORFEITURE
OF PROHIBITED OR SEIZED MERCHANDISE

19 CFR Part 162

| 1. Port/Office | 2. Date | 3. Seizure No. |
|---|---|---|
| 4/11/20  Hartford | 4/11/20 | |

4. Description of Abandoned Merchandise

- US Currency

I hereby abandon all claims to the above-described merchandise, and waive any further rights or proceedings relative to these articles.

| 5. Owner or Importer Name | Signature | Date |
|---|---|---|
| Rina Johannes | X R. Johan | 4/11/20 |

6. Owner/Importer Address

Rina Johannes  [REDACTED]  HTFD, CT

| 7. Witness Name (DHS Officer/Agent) | Signature | Date |
|---|---|---|
| Zachary Kashmanian | | 4/11/20 |

DHS Form 4607 (06/11)